## THE COLLINS CO. *v.* OLIVER AMES & SONS CORPORATION.

*Circuit Court, S. D. New York.* July 3, 1882.)

TRADE-MARK—FIRM NAME—INFRINGEMENT.

Prior to 1834, S. W. Collins, D. C. Collins, and another, copartners as Collins & Co., made edge-tools, using as a trade-mark "Collins & Co." In 1834 they assigned to the Collins Manufacturing Company, a corporation, the right to such trade-mark. In 1843 the right to make all articles of metal was conferred on the corporation, and its name was changed to the Collins Company, the plaintiff. It always stamped "Collins & Co." on its productions. In 1856 the firm of Oliver Ames & Sons began to put the stamp and label "Collins & Co." on shovels made by it, and sent to Australia. The plaintiff had not up to that time made shovels, but it had a market in Australia for the articles it made and stamped "Collins & Co." The object of Oliver Ames & Sons in putting the stamp "Collins & Co." on the shovels, was to avail themselves of the credit and reputation and market which the plaintiff had established for itself for articles stamped "Collins & Co." The plaintiff, at the time of bringing this suit, had not sent or sold any shovels to Australia. The defendant, in succession to Oliver Ames & Sons, continued to do what the latter so began to do in 1856. *Held,* that the acts of Oliver Ames & Sons, and of the defendant, were always unlawful. The plaintiff having had, from 1843, the right to make all articles of metal, and having gone on from that time, both before and after 1856, extending its manufacture beyond edge-tools into digging tools, such as picks and hoes, and having always put the mark "Collins & Co." on its best quality of articles, the fact that it did not, before 1856, make a digging tool such as the shovel on which, in 1856, Ames & Sons put the mark "Collins & Co.," does not warrant the conclusion that that mark was not, in 1856, the mark of the plaintiff's trade in respect to such shovels.

In Equity.

*John Sherwood,* for plaintiff.

*William M. Evarts* and *Charles C. Beaman, Jr.,* for defendant.

BLATCHFORD, Justice.    Prior to May, 1834, Samuel W. Collins, David C. Collins, and John F. Wells, as copartners under the name of Collins & Co., had been carrying on, in the state of Connecticut, the business of making and selling axes and other edge-tools.    They have been in the habit of using as a trade-mark the words "Collins & Co." stamped on the articles which they made.    They failed in business.    In May, 1834, the legislature of Connecticut created a corporation by the name of "The Collins Manufacturing Company," to be located in the town of Canton, in that state, "for the purpose of manufacturing edge-tools."    In October, 1834, the copartners in said firm assigned to said corporation "the reputation and good-will of the business heretofore carried on by the said firm of Collins & Co., of manufacturing and vending axes and other edge-tools, also the right to stamp the name of Collins & Co. on the articles manufactured by the said corporation."    From that time until April 3, 1835, the corporation had Samuel W. Collins and David C. Collins in its employ.    On the latter date each of those persons executed an agreement with the corporation, whereby he agreed to continue in its employ for five years from September 27, 1834, and it agreed to employ him for that time, and he assigned to the corporation "the reputation and good-will of the business heretofore carried on by Collins & Co., of manufacturing and vending axes and other edge-tools, also the sole and exclusive right to stamp the name of Collins & Co., Hartford, on the articles manufactured by said corporation," and he agreed not to sell any axes or other edge-tools having on them the name of Collins or Collins & Co., except such as should be made by said corporation, its successors or assigns.    The consideration of each agreement was an annual salary, and certain shares of the capital stock of the corporation.    In May, 1843, the legislature of Connecticut altered and enlarged the charter of the corporation, so that it should have "power to manufacture iron and steel, and other metals, and any articles composed of said metals, or either of them," and enacted that the name of the corporation should be "The Collins Company," instead of "The Collins Manufacturing Company," these provisions being conditioned on their acceptance by the corporation at a future meeting of the same, duly convened.    In October, 1844, such a meeting was duly convened, and at it the stockholders accepted the said alterations of the charter.    The capital of the corporation was originally $300,000.    The legislature increased it in 1863 to $500,000, and in 1866 to $1,000,000.

The factories of the corporation have always been at Collinsville, in the town of Canton, in Hartford county, Connecticut, about 16 miles from Hartford.    The manufacturing business of the old firm of Collins & Co. had been carried on at Collinsville.    It had an office in Hartford.    The charter of the corporation was obtained for the benefit of the creditors of the firm, and the property of the firm

passed into the possession of the corporation, and became a part of its capital stock.

The complaint in this suit alleges that the plaintiff corporation has, from its organization, been engaged in making "axes, hatchets, adzes, picks, and other agricultural and mechanical tools and implements;" that it has always used as its trade-mark the name of "Collins & Co.," but has placed and now places that name upon such goods only as have obtained a high standard of excellence; that said trade-mark name was intended to and did inform purchasers that the goods upon which it appeared were of the manufacture of the plaintiff exclusively; that its goods, made at Collinsville, have been and are almost exclusively sold on commission in the city of New York, by a firm there called Collins & Co., which has existed since 1849; that the goods of the plaintiff "have been and are sold in large quantities in all parts of this country, in Mexico, in most countries of South America, and in the West India islands, in England, Germany, Russia, and other countries of Europe, and also in parts of Asia and Africa, and in Australia; that the plaintiff, for more than 30 years last past, has gradually increased and extended its manufacture from "axes, hatchets, broad-axes, picks, mattocks, and other similar tools and implements," "so as to include therein other mechanical and agricultural tools and implements, such as hoes of various descriptions, *machetes*, and other cane-cutting implements for use in the West Indies and South America, and also, about the year 1857, special implements and tools for digging Peruvian guano, and, soon afterwards, other implements and tools, such as spades and plows;" that, for more than 10 years last past, it has made and sold shovels of various forms, patterns, and descriptions, and its trade, especially for export, in such shovels, has been and is now successful and profitable; and that the best qualities of the said tools and implements of the plaintiff's manufacture have been and are stamped or branded with the said name and words "Collins & Co.," and the shovels so made and sold by it have been and are now stamped or branded and labeled with the said name and words "Collins & Co."

The defendant is a corporation created by the state of Massachusetts, having its factories at North Easton, in that state, and largely engaged in making shovels, spades, scoops, and other similar implements and tools. The complaint alleges that, in the autumn of the year 1879, the plaintiff for the first time discovered that shovels had been and were being sold in the city of New York, having stamped or branded upon the iron the name and words "Collins & Co.," "Cast Steel," and that upon the handles thereof were pasted or fastened labels, which had the following words printed or engraved thereon: "Best Cast Steel, Manufactured and Warranted by Collins & Co., North Easton, Mass., U. S. A.;" that the said shovels were in fact made and so stamped or branded and labeled by the defendant, and not by the plaintiff; that said shovels were sold by the defendant in the

city of New York; that the statement and representation contained in and made, by said stamps or brands and labels, that the said shovels were made by "Collins & Co.," is false; that no such firm as "Collins & Co." is or has been engaged in any such manufacture at North Easton, Massachusetts; that no firm in the country, in the same business, bears the name of "Collins & Co." other than that represented by the plaintiff, or its said commission house of Collins & Co. of New York; that the shovels made by the defendant, and so branded, stamped, and labeled "Collins & Co.," have been and are now being sold by it in the city and state of New York, and elsewhere in the country, and considerable quantities thereof have been exported to foreign countries, such as Australia, South Africa, and elsewhere; that the use of the name of "Collins & Co." on shovels or any other articles by the defendant is unauthorized; that said name has been taken and is so used by the defendant to induce purchasers to believe that said goods were and are made by the plaintiff; that the effect of such use and misrepresentation by the defendant is also to defraud the plaintiff in its trade, and to injure its reputation; that in December, 1879, the defendant was requested by the plaintiff to discontinue the use of the name of "Collins & Co." on shovels, tools, and implements made and to be made by the defendant, but it refused to do so; that the defendant makes and sells shovels with the name of "Collins & Co." thereon, and said shovels are of an inferior quality to those of the plaintiff, and also of an inferior quality to those of the defendant upon which it uses its own name, and the reputation and trade of the plaintiff are injured by the said acts of the defendant; and that the plaintiff has thereby sustained damages to a large amount. The prayer of the complaint is that the defendant be enjoined from stamping or branding the name or words "Collins & Co." or "Collins" on any shovels or implements of its manufacture, and from placing any labels with the name or words "Collins & Co." or "Collins" on any shovels or implements of its manufacture, and from selling or disposing of any shovels or implements with the name "Collins & Co." or "Collins" thereon, and from using in any manner the name or words "Collins & Co." or "Collins" as a trade-mark upon any shovels, implements, or other articles, and from using in any manner the plaintiff's trade-mark of "Collins & Co." or the name of "Collins." It also prays for an accounting and for $10,000 damages. This suit was brought in the supreme court of New York, and was removed into this court. The complaint was put in in the state court. The answer and the replication to it were put in in this court. The answer states that it treats the complaint as a bill of complaint.

The answer denies that the reputation of any goods of the plaintiff's manufacture has been injured or impaired by any imitation or infringement by the defendant, and that the defendant has imitated or infringed any of the goods or marks or trade-marks of the plaintiff. It avers that the defendant and its predecessors are, and have

been for upwards of 75 years, largely engaged in the business of manufacturing shovels, spades, scoops, and similar implements and tools. It admits and avers that, in the autumn of 1879, as well as for upwards of 23 years before that time, shovels of the manufacture of the defendant and its predecessors were being and had been sold in the city of New York, having stamped or branded on them the name and words "Collins & Co., Cast Steel," or put in similar words, and having pasted or fastened on the handles thereof labels which had the following words, or such or similar words, printed or engraved thereon : "Best Cast Steel, Manufactured and Warranted by Collins & Co., North Easton, Mass., U. S. A.;" and that such shovels, bearing such marks and labels thereon, were in fact manufactured, and so stamped and branded or labeled, by the defendant and its predecessors, as well as by other manufacturers, and not by the plaintiff. It avers that the defendant and its predecessors had been in the habit of manufacturing shovels, and stamping, branding, and labeling them with the said words, or with such or similar words, from time to time since the year 1856, and that the plaintiff and its predecessors have known that fact for many years last past, and since about the time of the use thereof by the predecessors of the defendant, in the year 1856. It admits and avers that the defendant and its predecessors have made such shovels from time to time since the year 1856, as aforesaid, and that no such firm as "Collins & Co." is or has been engaged in any such manufacture at North Easton, in Massachusetts; that the shovels made by the defendant, and so branded, stamped, and labeled "Collins & Co.," have been and are now being sold by it in this country, and that large quantities thereof have been exported to foreign countries, such as Australia, South Africa, and elsewhere; that such sale and export have been going on in the usual and ordinary course of business of the defendant and its predecessors for 25 years or thereabouts; and that neither the plaintiff, nor the Collins Manufacturing Company, nor any firm of Collins & Co., ever manufactured any shovels branded, stamped, or labeled with the name of Collins & Co., or any shovels whatsoever, until long after such shovels of the defendant, so branded, stamped, and labeled, had been introduced into the market and sold and exported to a large amount, and had acquired a high reputation in consequence of the quality of the material of which they were manufactured, and the care and skill exercised in the manufacture and selection thereof, or ever manufactured or sold any such shovels until within the last few years, if at all. It denies that the use by the defendant of the name "Collins & Co." on shovels, or any other articles upon which such name may be used by it, is unauthorized or involves any false representation in respect thereto, or that said name has been taken, or has been or is used, by the defendant to induce purchasers to believe that said goods were or are manufactured by the plaintiff, or that the effect of such use, or of any representations by the de-

fendant in respect thereto, is either to deceive purchasers or the public, or to defraud the plaintiff in any way, or to injure any good name or reputation which it may have. It avers that, in using the same, the defendant used only its own trade-mark, to which it became entitled by reason of the use of such mark by it and its predecessors upon its and their shovels since the year 1856. It admits that in December, 1879, the defendant was applied to by the plaintiff to discontinue the use of the name of "Collins & Co." upon its shovels, and that it refused to discontinue such use thereof, asserting that it had the lawful right to use such name upon the shovels manufactured and sold by it. It admits and avers that the defendant makes and sells, and it and its predecessors have, for nearly 25 years, made and sold, considerable quantities of such shovels with the name of "Collins & Co." thereon; and that such designation is used by it upon a quality of shovels inferior to the very superior grade of shovels upon which it uses its own name. It denies that such shovels are of an inferior quality to any shovels manufactured by the plaintiff; that the reputation of the plaintiff or its trade is injured or impaired by any acts of the defendant; or that the plaintiff has thereby sustained any damages. It avers that, if the plaintiff is now manufacturing any shovels and is stamping the same with the brand of "Collins & Co." and selling the same either for domestic consumption or export, it is wrongfully acquiring great benefit and advantage from the use which the defendant and its predecessors have heretofore made of such title of "Collins & Co." upon shovels of its and their manufacture, and is infringing upon rights which the defendant has heretofore acquired by such use of such name in connection therewith. It avers that, in the year 1856, Oliver Ames, Oakes Ames, and Oliver Ames, Jr., of North Easton, in the State of Massachusetts, were doing business as copartners under the firm name of Oliver Ames & Sons, and were engaged, as they and their predecessors, for upwards of 50 years, had been, in the manufacture, at said North Easton, of shovels and spades; that for the very highest grade of shovels manufactured by the said firm, which was of superior excellence and comprised only shovels and spades selected with great care from the production of their factories, the name of O. Ames was used as the trade-mark of the said firm; that for grades of the shovels and spades manufactured by said firm which, although inferior to the first grade above mentioned, were superior to most of the shovels and spades manufactured by other persons or parties, other names and trade-marks were applied, which were selected for the purpose; that in the month of April, 1856, the name "Collins & Co." was by said firm stamped upon and used to designate certain of the shovels which were manufactured by it; that, since that time, the said name of "Collins & Co." has been, from time to time, stamped by the said firm and its successors, including the defendant, upon shovels and spades manufactured by it and them; that such firm and its successors, including

the defendant, have thereby acquired a right to the use of such name upon and in connection with the shovels and spades manufactured by said firm and its successors, including the defendant; that such firm of Oliver Ames & Sons continued until the year 1876, new members being admitted to such firm from time to time, and the original members thereof having died; that such firm continued, notwithstanding such changes in the membership thereof, to carry on its business of the manufacture of shovels and spades without interruption, and to own and enjoy the marks and trade-marks thereof, and to carry on the business of manufacturing shovels and spades at the same place, and in the same factories, and with the same establishment, until the said year 1876, when the defendant, then a corporation under the laws of Massachusetts, succeeded to and became, by transfer from the said firm, the owner of all its rights, property, marks, and trade-marks, including the right to the use of the name or mark "Collins & Co." upon shovels, and the brands, stamps, and labels theretofore used in connection therewith by the said firm; that the defendant thereby acquired the right of the said firm to the use of the said name, brands, stamps, and labels, and has since continued to exercise the right to the use thereof, which has now been enjoyed by the defendant and its predecessors for nearly 25 years; that if the firms of Collins & Co., and the Collins Manufacturing Company, and the plaintiff, exist and have existed, they have all acquiesced in and assented to the use by the defendant and its said predecessors of the name of the said "Collins & Co." and the brands, stamps, and labels above mentioned, in connection with shovels, in the like manner to that in which the same are now used by it in connection therewith, and have ratified and approved the same, and are estopped now from objecting thereto; that neither of said firms of Collins & Co., nor the said Collins Manufacturing Company, nor the plaintiff, made any use of the name "Collins & Co." upon or in connection with any shovels manufactured by it or them, or either of them, or ever manufactured any shovels upon which it or they or either of them could or might have used such name, until such use thereof had for many years been made by the predecessors of the defendant and by the defendant; and that any attempted use of the name "Collins & Co." by the plaintiff, after the acquisition by the defendant of the rights which it had so acquired in respect to the use of such name or mark, was and is an infringement upon the rights of the defendant to the use of such name or mark upon and in connection with shovels manufactured by it.

The circumstances under which the firm of Oliver Ames & Sons the predecessor of the defendant, began to use the mark "Collins & Co." on shovels, were these: On the twenty-first of March, 1856, John W. Quincy, a merchant in the city of New York, wrote the following letter to Oliver Ames & Sons:

"*Messrs. Oliver Ames & Sons*—GENT'.: A party here has an order from Australia for the following shovels; they must be exactly to order as to *weight* and *size*. His order is for *Collins'* shovels, but I have no doubt that your shovels are wanted. I gave him your list prices and 5 per cent. for cash. These parties' names are J. & R. Osborn, and if they write you, please turn them over to me, or give them 5 per cent. for cash. I expect my advertisement brought them, and I want to make part of advertisement out of these folks. Their order runs thus:

"100 dozen best and lightest bright D handled shovels, C. S., well packed in cases; should weigh only 3½ pounds; handles to measure 23 to 24 inches *only*.

"25 dozen C. S. spades, with extra long strap and side strap, if made so.

"12 dozen long-handle shovels, square.

"12 dozen     "     "     "     round.

"The above is exact copy of order, and the party wishes us to furnish the price of each. As the first lot of 100 doz. are lighter than your regular shovels, I told him I would write you, and get an answer at once direct, and inform him.

"Please say how soon you can furnish them if wanted, and the probable cost of packing. Your immediate answer will oblige   Yours, truly,

"*New York, March* 21, 1856.            JOHN W. QUINCY."

On the twenty-fourth of March, 1856, Oliver Ames & Sons replied to Mr. Quincy by letter, but neither it nor a copy of it is produced. To that letter Mr. Quincy replied as follows, March 26, 1856:

"NEW YORK, March 26, 1856.

"*Messrs. Oliver Ames & Sons*—GENT.: Your favor of the 24th inst. is at hand. The party gave me the order; he thinks the 100 dozen shovels are to be *square* point, as the order does not say round point. Please send them as per our letter of the 21st inst. Please have a label made for them thus: 'Made expressly for C. G. Stevens,' and get a stamp *for the shovels*, Collins & Co., and keep the stamp for our use, as we expect to get further orders for them; or, if you prefer it, I will get them made here and sent to you. We would like the shovels made and forwarded as soon as practicable.

"To be packed in boxes and strapped as usual for shipping. These boxes are to be shipped to England and put in custom-house (bond) there and then they go to Australia free of duty. It costs less to ship this way than to pay *duty* direct to Australia; you will, therefore, have them packed right.

"Yours, truly,                     JOHN W. QUINCY."

Mr. Quincy was at that time, and before and after, a dealer in the shovels made by Oliver Ames & Sons. The shovels so ordered were made by Oliver Ames & Sons, and were stamped or branded "Collins & Co." by them. At that time the selling firm of Collins & Co. existed in New York. The plaintiff did not at that time make shovels, but the articles which it did make were sent to Australia, and it had an established reputation for the excellent quality of such articles. The shovels then and theretofore made by Ames & Sons had the reputation of being the best shovels made.

It is very clear that when Quincy stated to Ames & Sons that the order he had received was for "Collins' shovels," he understood, and he meant that Ames & Sons should understand, and they did understand, that the order, as given, was for shovels made or to be made

by the Collins Company, that is, the plaintiff. But Quincy knew that the plaintiff made no shovels and that Ames & Sons did make shovels. So he showed to those who came to him the shovel list of Ames & Sons. For some reason, a party in Australia, wanting shovels, had ordered "Collins' shovels," although there were none. Other articles of the plaintiff's manufacture were found in Australia, of high repute and good quality, articles of steel, kindred in character to shovels. It would be natural to think that, as other good articles of steel were of the Collins' make, the way to surely get a good shovel was to get one of the Collins' make; and it would be natural to assume that there were Collins' shovels. The letter of Quincy shows that he informed those who came to him with the order that there were no Collins' shovels, and also informed them that he proposed that the order should be filled with shovels made by Ames & Sons. This was very well, and, so far, was fair dealing. The proposal was acquiesced in, for the arrangement was that Quincy should write to Ames & Sons and obtain the prices at which the articles would be furnished. It would appear that Ames & Sons, in reply, desired to know whether the order was given absolutely or not to Quincy; for Quincy replied that the party had given the order to him. He then requested Ames & Sons to fill it, and also directed that, besides the label "Made expressly for C. G. Stevens," which it must have been intended should be pasted on the wooden part of each shovel and each spade, each shovel of the 100-dozen order should have on it, impressed on the metal, the mark "Collins & Co.," to be made by a stamp. As it was understood that these articles were to go to Australia, both Quincy and Ames & Sons must have had some object in view connected with Australia. Quincy states, in his second letter, that he wishes the stamp to be kept for his use in filling further orders for like shovels, meaning further orders from Australia. He and the defendant could have intended nothing but that the idea which had come from Australia that there were Collins' shovels, though incorrect in fact, should become to the minds of people in Australia a realized idea, by their seeing on shovels the stamp "Collins & Co.," and deriving therefrom the belief that the same Collins & Co. which had made the axes and other articles before familiar to them had made these shovels. It appears that the axes and other articles made by the plaintiff, and which before that time were known and used in Australia, were stamped "Collins & Co." Therefore, although the shovels made by Ames & Sons under this order and subsequently, and stamped "Collins & Co.," and sent to Australia and elsewhere, may intrinsically have been of high quality, yet the only object of the defendant in putting the stamp "Collins & Co." upon them must have been to avail himself of the credit and reputation and market which the plaintiff had established for the articles it made and sold with the stamp "Collins & Co." upon them. There was no other purpose in this. Clearly, those who purchased shovels made by Ames & Sons, and

stamped "Collins & Co.," would believe that such shovels were made by the plaintiff, for there was no other Collins & Co. than the plaintiff. This was an unlawful appropriation of the plaintiff's trademark. It is true that the plaintiff up to that time had made no shovels. It is also true that Ames & Sons and the defendant have built up a business in shovels stamped "Collins & Co." But the plaintiff had a right to make shovels, and it had made kindred articles of metal, and its good name and reputation in its business were wholly connected with the use, in its trade, of the mark "Collins & Co." Quincy's first letter shows that the nature of the plaintiff's trade was such that persons in Australia, desiring shovels, expected to find shovels made by the plaintiff, which shovels, if found, would have borne the stamp "Collins & Co." If, when the inquiry was made of Quincy, he had produced the shovels, the make of Ames & Sons, already made and stamped "Collins & Co.," in the same condition as when they were afterwards made on the order, the purchaser would have believed that the shovels were the make of the plaintiff, that being what the order really asked for, if nothing had been said or shown to indicate that they were not made by the plaintiff. As the fact was, the impression produced in Australia, by the shovel itself, with the stamp "Collins & Co.," was the same, although the persons who visited Quincy were informed that the shovels were the make of Ames & Sons.

It is true that the plaintiff's business in shovels has been very small, while that of Ames & Sons and the defendant has been very large. It is also true that the plaintiff has never sold or sent any shovels to Australia. It also true that Ames & Sons and the defendant have put the stamp "Collins & Co." on only a particular description of shovel or spade, in all 52,000 dozen since 1856, while their make of shovels for the last 10 years has been from 100,-000 dozen to 120,000 dozen a year. The 52,000 dozen have gone abroad wholly, largely to Australia. But the question of profit to the defendant or damage to the plaintiff is aside from the question of the right of the plaintiff to its trade-mark. In view of the circumstances under which Ames & Sons adopted the mark "Collins & Co." on the shovels, it must be held that they had no right to adopt it, and that its use by them was always unlawful.

The *animus* of the defendant is shown in the representation in the label on the shovel that "Collins & Co." is a firm making shovels in North Easton, and that the shovel stamped "Collins & Co." was made by that firm at that place. To the user or purchaser of the individual shovel in Australia, the mark "Collins & Co." on the steel or the wood would be all that was needed to induce him to believe that he was using or buying a shovel made by the same "Collins & Co." which made the excellent edge-tools, while in the United States it could be asserted that every dealer would know that there was no firm of "Collins & Co." at North Easton making shovels, and so that

representation would there deceive no one, and would not there induce the belief that the shovels were made by the plaintiff.

It is strongly urged, on the part of the defendant, that a mark or stamp, to be a trade-mark, must be the mark of an existing trade; that the mark "Collins & Co." on shovels, when adopted by Ames & Sons, became the mark of a trade in shovels carried on by Ames & Sons; that the plaintiff had no trade in shovels at the time; that the mark "Collins & Co." thus became the mark of Ames & Sons' trade in shovels, and the property of Ames & Sons in respect to shovels made by them, by prior right; that any use of that mark on shovels afterwards by the plaintiff became wrongful as against Ames & Sons or the defendant; and that the plaintiff has no right in the premises which it can enforce against the defendant. This view is specious but unsound. The plaintiff having from 1843 the right to make any article of iron, steel, or other metal, and having gone on from that time, both before and after 1856, extending its manufacture beyond edge-tools into digging tools, such as as picks and hoes, and having always put the mark "Collins & Co." on its best quality of articles, the fact that it did not before 1856 make a digging tool such as the shovels on which, in 1856, Ames & Sons put the mark "Collins & Co.," does not warrant the conclusion that that mark was not in 1856 the mark of the plaintiff's trade in respect to such shovels.

The plaintiff is entitled to a decree for a perpetual injunction, as prayed in the bill, and for an accounting before a master as to profits and damages, and for the costs of the suit.