■ JMZ USA, INC., et al., Appellants, v LUMBERMENS MUTUAL CASUALTY COMPANY et al., Respondents. [828 NYS2d 385]—

---

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered April 26, 2005, which denied plaintiffs' motion for summary judgment declaring that defendant Lumbermens had a duty to defend them in the underlying action, and granted Lumbermens' cross motion for summary judgment declaring that it had no such duty, unanimously affirmed, with costs. Order, same court and Justice, entered April 10, 2006, which granted defendant Federal's motion for summary judgment declaring that it had no duty to defend plaintiffs in the underlying action, unanimously affirmed, with costs.

Plaintiffs seek a declaration of entitlement to a defense from their insurers in an underlying action brought by the owners of several Vertigo brand clothing franchises for damages allegedly resulting from plaintiffs' sale of the brand to discount retail establishments. The Vertigo franchise owners' complaint, which asserts causes of action for tortious interference with contract, tortious interference with prospective business advantage, and violation of Florida's deceptive and unfair trade practices statute, alleges that the Vertigo brand is associated with sophisticated, haute couture ladies' apparel, that marketing of the brand focuses on its exclusivity, mystique and excitement, and that consequently Vertigo apparel is sold in only a limited number of Vertigo retail locations, specialty boutiques and upscale department stores. The underlying complaint alleges that plaintiffs are widely distributing Vertigo brand apparel to outlet retailers and discount stores in the markets where the Vertigo franchises are located, with full knowledge that these discount outlets will sell the same brand new Vertigo merchandise that is available at the exclusive franchise locations but at significantly lower prices, and that as a result the Vertigo franchise owners have suffered both the loss of customers and the destruction of the goodwill and reputation for high quality that they spent considerable time, money and resources developing.

The insurance policies issued by Lumbermens to plaintiffs obligate it to defend actions seeking damages for "personal injury" as defined in the policies. That definition includes injury arising out of "Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Plaintiffs argue that the underlying complaint alleges they disparaged Vertigo merchandise by placing it in stores that sell goods of inferior quality, i.e., that they disparaged the Vertigo brand "by association." However, the motion court properly found that even accepting the allegations of the underlying

complaint as true and affording them every favorable inference, that complaint does not allege that the Vertigo franchise owners suffered an injury arising out of any oral or written publication of disparaging material by plaintiffs. Rather than referring to oral or written publication of disparaging material, the complaint attributes the injury to the alleged effect of the presence of plaintiffs' lower-priced goods in the market (*see Elite Brands, Inc. v Pennsylvania Gen. Ins.*, 2004 WL 1945732, *6, 2004 US Dist LEXIS 17512, *19 [SD NY 2004], *affd* 164 Fed Appx 60 [2d Cir 2006]).

To the extent the insurance policies issued to plaintiffs by Federal define "personal injury" and "advertising injury" in terms identical or similar to those in which the Lumbermens policies defined "personal injury," plaintiffs' claim against Federal must also fail because the underlying complaint did not allege injury arising out of an oral or written publication. As to "advertising injury," the Federal umbrella policies contain an endorsement that excludes advertising injury from coverage. Contrary to plaintiffs' contention, this endorsement was unambiguous and must be enforced as written (*Charnowitz v GEICO*, 177 AD2d 320, 321 [1991]), and since plaintiffs made no showing that they were prejudiced by Federal's delay in disclaiming coverage on that basis, Federal was not estopped to enforce the exclusionary endorsement (*Fairmont Funding v Utica Mut. Ins. Co.*, 264 AD2d 581 [1999]). Coverage was unavailable to plaintiffs under the advertising injury provisions of the primary Federal policies because the Vertigo owners' complaint does not allege that plaintiffs engaged in any advertising activities (*A. Meyers & Sons Corp. v Zurich Am. Ins. Group*, 74 NY2d 298, 303 [1989]). Concur—Mazzarelli, J.P., Friedman, Williams, McGuire and Malone, JJ.